UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOURDES ASHLEY HUNTER<br>1827 Summit Place, N.W.<br>Washington, D.C. 20009,<br><br>                Plaintiff,<br>   v.<br><br>OFFICER RANDY ROGERS<br>(Badge No. 5720)<br>MPD Third District Station<br>1620 V Street, N.W.<br>Washington, D.C. 20009,<br><br>OFFICER CARLOS TEJERA<br>(Badge No. 10376)<br>MPD Third District Station<br>1620 V Street, N.W.<br>Washington, D.C. 20009,<br><br>OFFICER JOHN McKNIGHT<br>(Badge No. 4447)<br>MPD Third District Station<br>1620 V Street, N.W.<br>Washington, D.C. 20009,<br><br>OFFICER ROBERT OWEN<br>(Badge No. 3931)<br>MPD Third District Station<br>1620 V Street, N.W.<br>Washington, D.C. 20009, and<br><br>DISTRICT OF COLUMBIA<br>c/o Office of the Attorney General<br>441 4th Street, N.W.<br>Washington, D.C. 20001,<br><br>                Defendants. | No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**
Seeking damages for police misconduct: violation of rights under the
Constitution of the United States and the law of the District of Columbia

## INTRODUCTION

1. On November 16, 2016, several officers of the District of Columbia Metropolitan Police Department (MPD) entered Plaintiff Lourdes Ashley Hunter's apartment and arrested her without a warrant based solely on allegations that she had committed misdemeanor simple assault. The officers' actions violated Ms. Hunter's rights under the Fourth Amendment to the Constitution of the United States and constitute false arrest under the laws of the District of Columbia. Ms. Hunter accordingly seeks compensatory and punitive damages from the officers and the District, as well as attorneys' fees, costs, and other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). Ms. Hunter brings this action under 42 U.S.C. § 1983 to vindicate her rights under the Fourth Amendment to the United States Constitution. Her claims under the common law of the District of Columbia arise from the same events as her constitutional claim and are within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The events giving rise to Plaintiff's claims occurred in the District of Columbia.

## PARTIES

4. Plaintiff Lourdes Ashley Hunter is an adult resident of the District of Columbia.

5. Defendant Officer Randy Rogers, Badge No. 5720, is a sworn officer employed by the MPD. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

6. Defendant Officer Carlos Tejera, Badge No. 10376, is a sworn officer employed by the MPD. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

7. Defendant Officer John McKnight, Badge No. 4447, is a sworn officer employed by the MPD. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

8. Defendant Officer Robert Owen, Badge No. 3931, is a sworn officer employed by the MPD. At the time of the events at issue he was acting within the scope of his employment. He is sued in his individual capacity.

9. Defendant District of Columbia is a municipal corporation, the local government of Washington, D.C., and operates and governs the MPD pursuant to the laws of the District of Columbia. In this case, the District of Columbia acted through its agents, employees and servants, including Defendants Rogers, Tejera, McKnight, and Owen.

**FACTS**

10. On November 16, 2016, Ms. Hunter, the co-founder and Executive Director of the Trans Women of Color Collective, hosted a dinner and reception in her apartment for people from around the nation who would be attending the White House Transgender Community Briefing with her the following day.

11. During the gathering, Ms. Hunter's downstairs neighbors knocked on her door and told Ms. Hunter they thought she and her friends were being too loud. Ms. Hunter, some of her guests, and the neighbors engaged in a verbal disagreement regarding whether Ms. Hunter and her guests were in fact being too loud.

12. After verbally interacting for several minutes, the neighbors left the hallway outside Ms. Hunter's apartment.

13. A short while later, Defendants Rogers, Tejera, McKnight, and Owen knocked at Ms. Hunter's apartment door.

14. Ms. Hunter opened the door, and one of the officers asked her if "something [had] take[n] place between [her] and another neighbor." Ms. Hunter stated that she didn't understand what the officer was asking.

15. When the officer said he was "investigating a possible assault," Ms. Hunter reacted with disbelief, stepped back into her apartment, and closed the door.

16. Several minutes later, the same four officers knocked on Ms. Hunter's door again. When she opened the door, one of the officers asked for her identification.

17. When Ms. Hunter asked why, the officer responded that they were "doing an investigation." After additional questions, the officer stated that they were investigating an assault.

18. At that point, several individuals came to the stairway leading to the landing on which the four officers were standing. An officer asked one of the individuals to indicate who had pushed him. He pointed to Ms. Hunter and stated that she had pushed him.

19. Ms. Hunter asked in disbelief, "I pushed you? I pushed you?" She then began to explain that there had been no assault and that there had been no excessive noise coming from her apartment.

20. One of the four officers interrupted her and began to move towards her. She stated, "You're not going to listen? Excuse me," and stepped back into her apartment.

21. None of the circumstances provided probable cause, or any reason, for any of the officers to believe that unless Ms. Hunter was immediately arrested, she might not be apprehended, might cause injury to others, or might tamper with, dispose of, or destroy evidence.

22. The officer who had interrupted Ms. Hunter followed her into her apartment, where he grabbed her by her arm and neck.

23. Inside the apartment, the officer was joined by another officer.

24. When Ms. Hunter asked the officers to let go of her, the officers stated that they were arresting her. She asked what for, and one of the officers replied, "for assault."

25. Ms. Hunter was placed in handcuffs and escorted to the courtyard of her apartment building, where she was required to sit handcuffed on a picnic bench for approximately 45 minutes before being transported to the Third District MPD station.

26. She was held in custody from approximately 11 p.m. on November 16, 2016 to 3 a.m. on November 17, 2016.

27. Ms. Hunter's arrest report states that she was arrested for simple assault and resisting arrest. The United States Attorney declined to prosecute.

28. Ms. Hunter suffered the deprivation of her liberty for several hours as a result of Defendants' unlawful actions.

29. Ms. Hunter suffered physical injury and pain as a result of Defendants' unlawful actions, including a pinched nerve in her arm from the tight handcuffs, exacerbated osteo-arthritis in her knee, and back pain.

30. As a result of Defendants' unlawful actions, Ms. Hunter suffered emotional distress and humiliation at being arrested in front of her friends and colleagues from

around the nation who would be with her at the White House the next day, being forced to sit handcuffed for 45 minutes in the courtyard of her apartment building, and knowing that many of the participants at the next day's White House Briefing knew of her arrest and were talking about it at the White House.

31. As a result of her injuries, Ms. Hunter has been required to receive physical therapy for her back pain, for which she has paid out of pocket.

32. Ms. Hunter's counsel has timely given notice in writing to the Mayor of the District of Columbia of the "approximate time, place, cause, and circumstances" of her injuries, pursuant to D.C. Code § 12-309. The Notice of Claim letter was delivered to the D.C. Office of Risk Management via certified mail on or about February 8, 2017.

## CLAIMS FOR RELIEF

### Claim I: Violation of Fourth Amendment Rights / 42 U.S.C. § 1983
### (Defendants Rogers, Tejera, McKnight, and Owen)

33. The actions of Defendants Rogers, Tejera, McKnight, and Owen, namely their warrantless entry into Ms. Hunter's home in order to effect the warrantless arrest, violated Ms. Hunter's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

34. Defendants Rogers, Tejera, McKnight, and Owen are jointly and severally liable to Ms. Hunter for this violation of her rights, pursuant to 42 U.S.C. § 1983.

### Claim II: False Arrest
### (All defendants)

35. Defendants' actions, described above, constituted false arrest under the law of the District of Columbia.

36. Ms. Hunter's arrest for simple assault, a misdemeanor, was an unlawful warrantless arrest under D.C. Code § 23-581, as the misdemeanor in question was not committed in the presence of the officers and the defendants had no probable cause, or any reason, to believe that unless Ms. Hunter was immediately arrested, she might not be apprehended, might cause injury to others, or might tamper with, dispose of, or destroy evidence.

37. Defendants Rogers, Tejera, McKnight, and Owen are jointly and severally liable to Ms. Hunter for this violation of her rights under the law of the District of Columbia.

38. Defendant District of Columbia is liable under the doctrine of *respondeat superior* for the damages inflicted upon Ms. Hunter by the false arrest committed by its agents Rogers, Tejera, McKnight, and Owen while acting within the scope of their employment as MPD officers and on behalf of and in the interests of their employer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a) RULE that the actions of Rogers, Tejera, McKnight, and Owen violated Plaintiff's rights under the Fourth Amendment to the United States Constitution and the laws of the District of Columbia;

(b) ENTER JUDGMENT awarding Plaintiff compensatory damages against all defendants in an amount appropriate to the evidence adduced at trial;

(c) ENTER JUDGMENT awarding Plaintiff punitive damages against defendants Rogers, Tejera, McKnight, and Owen in an amount appropriate to the evidence adduced at trial;

(d) ENTER JUDGMENT awarding Plaintiff her costs and reasonable attorneys' fees in this action as provided in 42 U.S.C. § 1988; and

(e) GRANT Plaintiff such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

                                        Respectfully submitted,

*/s/ Scott Michelman*
Scott Michelman (D.C. Bar No. 1006945)
Arthur B. Spitzer (D.C. Bar No. 235960)
Shana Knizhnik[*]
American Civil Liberties Union
   of the District of Columbia
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
Tel. 202-457-0800
Fax 202-457-0805
smichelman@acludc.org

February 28, 2017                          Counsel for Plaintiff

---

[*] Admitted in New York. Practicing in D.C. under supervision of a D.C. Bar member while D.C. Bar application pending, pursuant to D.C. Ct. App. R. 49(c)(8).